# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

**In re:**

JOEY CARL GORRINGE,

**Debtor.**

**Bankruptcy Case No. 05-42291**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

      Paula Brown Sinclair, Twin Falls, Idaho, Attorney for Debtors.

      Shaun R. Bonney, SHEARER & BONNEY, Boise, Idaho, for Creditor Action Collection Service, Inc.

      In a motion filed on May 15, 2006, Debtor Joey Carl Gorringe claims Creditor Action Collection Services Inc. violated the § 362[1] automatic stay by attempting to collect on a judgment after Debtor filed for bankruptcy relief.

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101- 1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, in effect prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

MEMORANDUM OF DECISION - 1

Docket No. 21. An evidentiary hearing concerning Debtor's motion was conducted by the Court on June 5, 2006. After careful review of the evidence submitted at the hearing, and having considered the parties' post-hearing arguments, Docket Nos. 29–30, 32–33, the Court concludes Creditor violated the automatic stay and that Debtor is entitled to recover damages. The following constitutes the Court's findings, conclusions and disposition of the issues. Fed. R. Bankr. P. 7052; 9014.

## Facts

Debtor filed for chapter 7 bankruptcy relief on September 22, 2005.[2] Docket No. 1. On December 5, 2005, Debtor received a letter from Creditor seeking to collect a debt. Ex. A. On December 8, 2005, Creditor Action Collection Service instructed the Jerome County Sheriff to garnish Debtor's First Federal bank account to satisfy another debt evidenced by judgment. Ex. 3. The deputy sheriff who attempted the garnishment indicated that no funds were in the account. Debtor, however, insists that the bank account contained $13 that was removed at Creditor's direction. Then, because the account balance was left at zero, the bank closed the account. Debtor was upset about these events and

---

[2] Debtor's discharge was entered on February 8, 2006. Docket No. 17.

MEMORANDUM OF DECISION - 2

worried that he may be unable to provide Christmas for his daughters if the garnishments continued.

After the attempted garnishment, Debtor contacted his bankruptcy attorney and authorized her to take care of the matter. On December 13, 2005, Debtor's attorney faxed a copy of the bankruptcy notice to the Jerome County Sheriff's Department. No further attempts were made to execute against Debtor's property or wages. Ex. 1. However, counsel did not notify Creditor of the stay violation, and Creditor thereafter sent two additional letters to Debtor. On January 11, 2006, Debtor received a letter from Creditor's attorney notifying Debtor of his right to dispute the validity of the debt and attempting to collect the debt. Ex. F. Debtor received another dunning letter from Creditor on January 18, 2006. Ex. G.

It is undisputed that a copy of the bankruptcy notice was mailed by the Bankruptcy Noticing Center to Creditor shortly after Debtor's case was filed. John Muir, Chief Financial Officer, Vice President and General Manager of several area Action Collection offices, testified at the hearing about the procedures Creditor employs when it receives notice that an account debtor has filed a bankruptcy case. The notice is directed to a specific employee who attempts to match the debtor's name and social security number on the notice to any names and numbers associated with Creditor's various collection accounts. In this

MEMORANDUM OF DECISION - 3

instance, the name associated with the account Creditor was attempting to collect was J. Gorringe. However, the bankruptcy notice listed Debtor's name as Joey Carl Gorringe or Joseph Carl Gorringe. While Debtor did not list "J. Gorringe" on his petition, it did list his former business name of "The Wrench" on the notice received by Creditor. Mr. Muir was unable to explain why Debtor's former business name, "The Wrench," was insufficient to identify the account as one associated with the bankruptcy, other than suggesting a human error had occurred that resulted in Debtor's name and social security number being overlooked. In this instance, it appears that Creditor simply failed to follow its own procedures to assure identification of each account impacted by a bankruptcy filing.

Debtor seeks compensatory and punitive damages from Creditor. Debtor alleges Creditor's stay violation was willful and caused Debtor emotional distress. Debtor testified that in order to deal with Creditor's collection attempts, he made four trips to his attorney's office, driving 55-60 miles each trip. In addition, Debtor testified he lost between eight and ten hours from work where he works on commission, generally making between $25 to $30 an hour. Debtor also seeks damages for the emotional distress he suffered as a result of the garnishment attempt against his bank account and the letters attempting to collect the debt. Debtor also asks for punitive damages and an award of attorney fees and costs.

MEMORANDUM OF DECISION - 4

Creditor responds that had Debtor's attorney promptly made it aware that J. Gorringe was the Debtor after the first collection letter was sent in December, the additional violations would not have occurred and Debtor would not have been damaged.  In addition, Creditor argues any stay violations in this case were not willful because it had no way of knowing that the account it was attempting to collect was related to Debtor's bankruptcy.  Finally, Creditor argues Debtor suffered no damages other than attorney fees incurred by pursuing this matter by way of a motion for sanctions instead of informally between the parties.

## Disposition

### 1. Creditor willfully violated the automatic stay.

Under § 362(a)(6), the filing of a bankruptcy petition operates to stay "any act to collect, assess, or recover a claim against the debtor that arose before the commencement [of the bankruptcy]." *In re Andrus*, 04.3 I.B.C.R. 137, 140 (Bankr. D. Idaho 2004).  "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees[.]" 11 U.S.C. § 362(h).  Once a creditor receives notice of the bankruptcy, "any actions intentionally taken thereafter are 'willful' within the contemplation of  § 362(h)." *In re Andrus*, 04.3 I.B.C.R. at 141 (citing *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d. 1210, 1215 (9th Cir. 2002)).  No specific intent to

MEMORANDUM OF DECISION - 5

violate the stay is required. *Id.* "The question is thus whether the actor intended the action, not whether the actor intended to violate the stay." *In re Risner*, 04.1 I.B.C.R. 172, 173 (Bankr. D. Idaho 2004) (citing *Eskanos & Adler*, 309 F.3d at 1214–15).

Creditor received adequate notice of the bankruptcy to require it to cease collection activities. Once Creditor receive a notice bearing the name "Gorringe," it was duty bound to inquire further with the Court, if it was uncertain about the identity of the debtor. Creditor appears to concede that a stay violation occurred because an employee mistakenly performed an incomplete search for accounts under the name "The Wrench" even though that business name was indicated on Debtor's bankruptcy notice and in Creditor's file. The Court finds Creditor received sufficient notice of the bankruptcy and simply failed to identify all of its accounts associated with Debtor's name. Though Creditor contends it did not intend to violate the automatic stay, the law is clear that a creditor need not intend to violate the automatic stay, but only intend the collection action, to run afoul of the § 362(a) stay. *See In re Risner*, 04.1 I.B.C.R. at 173. By attempting to execute against Debtor's bank account and sending various collection letters to Debtor after receiving notice of the bankruptcy, Creditor willfully violated the automatic stay.

MEMORANDUM OF DECISION - 6

### 2. Debtor suffered actual damages.

The burden is upon Debtor to prove his actual damages. *In re Risner*, 04.4 I.B.C.R. 172, 174 (Bankr. D. Idaho 2004). However, it has been noted that "[w]hen a creditor's conduct is not particularly egregious and the debtor makes no effort to correct the problem before racing into Court, there is no absolute requirement that sanctions be imposed." *Id.* at 175.

Creditor maintains its conduct resulted from a human error in failing to match the accounts under the name "The Wrench" with the bankruptcy notice also containing the name "The Wrench" or by searching under the social security number provided. However, Creditor took multiple actions against this account after Debtor filed for bankruptcy relief. In addition to sending collection letters, Creditor also attempted to garnish funds from Debtor's bank account. These actions caused Debtor damage in that he was required to take action to discourage or prevent Creditor from continuing its attempts to collect on the debt, after Creditor received notice of the bankruptcy filing.

Debtor suffered actual damages when he was required to enlist the assistance of his attorney to ensure that the automatic stay would not be further violated and no additional garnishments would be attempted. Debtor testified he made four trips to his attorney's office regarding this matter, and he requests he be

MEMORANDUM OF DECISION - 7

awarded travel expenses at the IRS rate of $.485 per mile. While four trips may seem unnecessary, the Court will not second-guess as unreasonable Debtor's perceived need to personally consult his attorney about Creditor's repeated collection attempts. Assuming each trip was approximately 55 miles, at the requested mileage rate, Debtor is entitled to compensation in the amount of $106.70 for his travel costs.

Debtor also testified that he missed eight to ten hours of work in order to make these trips to his attorney's office. Debtor explained he works on a commission basis and makes between $25 and $30 an hour. On this basis the Court concludes Debtor should be awarded damages in the amount of $200, for approximately eight hours of missed work at $25 per hour.

Debtor is also entitled to recover his attorney fees and costs under these circumstances. Based upon the Court's knowledge of the facts, and familiarity with the cost of local legal services, the Court awards Debtor a total of $1,000 in attorney fees and costs.

Creditor argues much of these damages could have been avoided had Debtor's attorney more promptly contacted Creditor about the stay violations. While Debtor is obliged to mitigate his damages, the Court will not penalize Debtor under these facts. It is Creditor's responsibility to properly respond to its

MEMORANDUM OF DECISION - 8

receipt of a notice about a bankruptcy filing. It can not complain the Debtor did not act more promptly in pointing out Creditor's own errors.

### 3. Debtor is not entitled to actual damages for emotional distress.

Damages for emotional distress may be recovered when caused by a willful violation of the automatic stay. *In re Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004). However, "not every willful violation merits compensation for emotional distress." *Id.* at 1149. In order to receive damages for emotional distress, Debtor must establish that he "(1) suffer[ed] significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Id.* Significant emotional distress may be established by corroborating medical evidence, non-experts such as family members, or it may be "readily apparent even without corroborative evidence." *Id.* at 1149–50.

That Debtor suffered emotional distress was not readily apparent to the Court from the facts proven. And Debtor did not show he suffered significant emotional harm due to Creditor's collection activities. The Court does not doubt Debtor found it upsetting that Creditor was actively engaging in debt collection activities both by sending Debtor letters and by attempting to satisfy a pre-

MEMORANDUM OF DECISION - 9

bankruptcy judgment by garnishing Debtor's bank account.  However distressing this may have been, though, Debtor did not show that he suffered any traumatic or severe emotional shock or injury.  The Court concludes Debtor is not entitled to damages for emotional distress.

### 4.  Punitive damages are not appropriate.

Punitive damages may only be recovered in "appropriate circumstances."  11 U.S.C. § 362(h).  "Such circumstances exist when there has been a 'reckless or callous disregard for the law or rights of others.'"  *In re Daniels*, 04.4 I.B.C.R. at 158.

Debtor did not show that Creditor acted with a reckless or callous disregard for the automatic stay.  Nor is this a case where the record shows Creditor engaged in a pattern of noncompliance with the automatic stay.  Rather, this appears to be a case where Creditor's normal procedures were either inadequate, or those procedures were not properly followed, to identify which of its account debtors had filed for bankruptcy. When Creditor was finally notified that the account it was collecting was related to Debtor's bankruptcy, the collection actions stopped.  These are circumstances where an award of punitive damages would be inappropriate.

MEMORANDUM OF DECISION - 10

## Conclusion

Creditor willfully violated the automatic stay by attempting to collect from Debtor after receipt of adequate notice that Debtor had filed for bankruptcy. Debtor may recover actual damages in the amount of $306.70 as reimbursement for travel expenses, lost wages of $200.00, and $1,000.00 for attorneys fees and costs incurred in prosecuting the Motion. Debtor did not show he suffered the sort of significant emotional distress required to justify a further award of monetary damages, and no punitive damages are appropriate under these facts.

Counsel for Debtor may submit a proposed order for entry by the Court. Counsel for Creditor shall approve the form of order.

Dated: July 7, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 11